UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SATTAR, INC. d/b/a HARRISON
LIQUOR & WINE MARKET,

        Plaintiff,

                                      Civil Case No. 14-cv-10113
v.                                    Honorable Linda V. Parker

UNITED STATES OF AMERICA,
U.S. DEPARTMENT OF AGRICULTURE
FOOD AND NUTRITION SERVICE,
RETAILER OPERATIONS DIVISIONS,

        Defendant.
_____/

## AMENDED OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this lawsuit, Plaintiff Sattar, Inc. ("Sattar"), doing business as Harrison

Liquor & Wine Market ("Harrison Market"), challenges the administrative

decision disqualifying it from participation in the Supplemental Nutrition

Assistance Program ("SNAP"), or "food stamp" program, administered by the

Food and Nutrition Service of the United States Department of Agriculture.

Pursuant the Food Stamp Act of 1964, as amended ("Food Stamp Act"), the United

States of America is the only proper defendant in this action.  7 U.S.C.

§ 2023(a)(13) ("If the store, concern, or State agency feels aggrieved by such final

determination, it may obtain judicial review thereof by filing a complaint against the United States . . .").

Presently before the Court are the parties' cross-motions for summary judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure on July 16, 2014. The Court held a hearing with respect to the motions on October 2, 2014. For the reasons that follow, the Court concludes that neither party is entitled to summary judgment.

## I.      Factual and Procedural  Background

Faris Korkis ("Korkis") and Abdul Sattar Shaya ("Shaya") are brothers. Korkis was the sole owner of Victor's Market ("Victor's"), a convenience store in Riverview, Michigan.  Shaya had no ownership or shareholder interest in Victor's, and was neither an officer, agent, nor employee.  (ECF No. 15, Ex. M ¶¶ 5, 6.) Korkis and Shaya, however, jointly owned another convenience store, the Korkis Market, located at 735 Harrison Boulevard in Lincoln Park, Michigan.  (A.R. 1-2.) Korkis was listed as the President of Korkis Market; Shaya was listed as its Secretary.  (*Id.*)

Victor's began participating in SNAP in 1995.  An investigation subsequently revealed that Korkis personally trafficked in SNAP benefits at Victor's, which led to its permanent disqualification from the program in March

2008 pursuant to 7 C.F.R. § 278.6(e)(1).  (*See* A.R. 28-29, 99.)  This section

authorizes the agency to permanently disqualify a firm if "[p]ersonnel of the firm

have trafficked"– i.e., engaged in "the buying, selling, stealing, or otherwise

effecting an exchange of SNAP benefits . . . for cash or consideration other than

eligible food."  7 C.F.R. §§ 278.6(e)(1)(i), 271.2.  Korkis admitted that he

personally conducted transactions in which SNAP benefits were exchanged for

cash.  (A.R. 29.)  Korkis requested and received administrative review, but the

disqualification "of Faris Korkis, Victor's Market" was upheld on May 22, 2008.

(*Id*.)

Korkis Market also participated in SNAP.  Its initial application was filed by

Korkis on November 25, 1997.  (A.R. 1-4.)  On June 18, 2009, Michael H. Skaer,

Officer-in-Charge of the United States Department of Agriculture ("USDA") Food

and Nutrition Service's Wisconsin Field Office, sent a letter via Federal Express to

Korkis, as President of Korkis Market, and Shaya, as Secretary.  (A.R. 30.)  Skaer

begins his letter by informing Korkis and Shaya: "[Y]our authorization to

participate in the Supplemental Nutrition Assistance Program and your

authorization card[1] . . . issued to you on December 12, 1997 are being permanently

---

[1]The letter referred specifically to the identifying number of the
authorization card being withdrawn, although that information was redacted from

(continued...)

withdrawn." (*Id.*) Skaer then refers to Korkis' violations of SNAP regulations at Victor's Market and cites to 7 C.F.R. § 278.1(b)(3)(ii)(vi), which enables the agency to "consider evidence of fraudulent behavior of officers, managers, or employees of the applicant firm and any other evidence reflecting on the business integrity of the applicant." (*Id.*) Skaer writes that "[i]t is, therefore, our decision to permanently withdraw the [SNAP] authorization of Korkis Market, Inc. on the basis of business integrity of Faris Noiel Korkis as indicated by his personal involvement in violation of [SNAP] regulations." (*Id.*) Skaer informs Korkis and Shaya that the agency's determination will become final unless they submit a timely request for review. (A.R. 31.)

On June 24, 2009, Attorney Peter Abbo sent a letter to the USDA Food and Nutrition Service (hereafter "FNS") on behalf of Korkis Market seeking review of the withdrawal. (A.R. 32.) In his letter, Abbo pointed out that Korkis Market did not violate SNAP rules, but that Korkis had at his separate and wholly owned store, Victor's. (A.R. 33.) Abbo indicated that Korkis has no active participation in the day-to-day operations of Korkis Market and that "[i]t would be patently unfair to disqualify this other business without a full review." (*Id.*)

---

[1](...continued)
the exhibit introduced into evidence. (A.R. 30.) At the motion hearing, the parties informed the Court that the card at issue was issued to Korkis Market, only.

Abbo sent FNS a follow-up letter on July 3, 2009, indicating that Korkis had been "dropped as a Shareholder, Director, and Officer of Korkis Market" on June 30, 2009. (A.R. 35.) Abbo attached a Stock Redemption Agreement to confirm the transaction. (*Id.*) Abbo requested that the Administrative Reviewing Officer ("ARO") permit Korkis Market to continue its participation in SNAP based on Korkis' removal from ownership. (*Id.*)

On October 6, 2010, ARO Nancy Baca-Stepan issued a Final Agency Decision, stating that "[i]t is the decision of . . . [FNS], that there is sufficient evidence to support a finding that a withdrawal from participation as an authorized retailer in . . . [SNAP] . . . was properly imposed against Korkis Market by the Madison, Wisconsin Field Office . . .." (A.R. 102-05.) ARO Baca-Stepan indicated that she could not consider events occurring after the disqualification decision had been made. (A.R. 104.) She therefore found that the field office's decision was proper under 7 C.F.R. § 278.1, as Korkis was an owner of Korkis Market at the time of the decision and he undisputedly had violated SNAP rules. (A.R. 104.) She wrote:

> The basis for the Field Office's action to withdraw Korkis Market is not that there were any direct violations of the SNAP regulations at Korkis Market. Rather, the basis of the withdrawal action is that an owner of the firm, specifically Faris Korkis, personally participated in the trafficking of SNAP benefits at Victor's Market and that such

5

involvement indicates a failure on the part of the firm to maintain the necessary business integrity to participate in the SNAP.

(*Id.*)  ARO Baca-Stepan informed Korkis Market of its right to seek judicial review of this final agency decision; however, review was not sought.

On March 25, 2011, Shaya, on behalf of Sattar, submitted an application to participate in SNAP at Harrison Liquor & Wine Market ("Harrison Market"), located at 735 Harrison Boulevard in Lincoln Park, Michigan (i.e., the same address where Korkis Market previously operated).  (A.R. 43-49.)  The application identified Shaya as the sole owner.  (A.R. 45.)  Question thirteen (13) on the application asked: "Has any officer, owner, partner, member, and/or manager ever had a license denied, withdrawn, or suspended, or been fined for license violations?"  (*Id.*)  Shaya responded, "No[.]"  (*Id.*)  On June 14, 2011, FNS authorized Harrison Market to participate in SNAP.  (A.R. 47.)

On March 1, 2013, Shaya, through Sattar, opened an additional convenience store called George's Liquor Wine Shop ("George's"), in Riverview, Michigan. (A.R. 52, 54.)  On June 24, 2013, Shaya submitted an application for George's to participate in SNAP.  (A.R. 54.)  In response to the same question thirteen posed on Harrison Market's application, Shaya again responded "no[.]"  (A.R. 55.)

On July 1, 2013, FNS notified George's that it was unable to process its

6

application because "Your firm was permanently withdrawn from SNAP, effective

November 08, 2010, at the location listed below [i.e., Korkis Market]" and "[a]

permanently withdrawn firm may not apply for program participation."  (A.R. 69.)

By separate letter dated July 1, 2013, FNS notified Shaya that Harrison Market's

authorization also was permanently withdrawn.  (A.R. 67.)  The letter stated:

> It is the determination of the Food and Nutrition Service that your
> application submitted by you on behalf of Sattar Incorporated
> constituted an attempt to avoid or circumvent the permanent
> withdrawal of you and your brother, Faris Korkis at Korkis Market.
> You both were permanently withdrawn from SNAP at Korkis Market .
> . . effective November 8, 2010 due to business integrity.

(*Id.*)  The letter informed Shaya of his right to seek review, and by letter dated July

18, 2013, Abbo requested review on behalf of Harrison Market.  (A.R. 67, 71-72.)

Abbo submitted additional materials in support of Harrison Market's request

for review on September 11, 2013.  (A.R. 92-97.)  He argued that Shaya did not

hold an ownership interest in– and never worked at– Victor's, where the SNAP

violations had occurred.  (A.R. 92.)  Abbo further argued that Korkis worked

exclusively at Victor's and did not work at Korkis Market, despite being a fifty-

percent shareholder.  (*Id.*)  Abbo indicated that Korkis Market had been operated

exclusively by Shaya.  (*Id.*)  According to Abbo, Shaya sought to "distance himself

from the bad acts of his brother" by forming a new corporation to which Korkis

Market was then sold.  (AR. 93.)  Because there is no relationship between Korkis and the new corporation, Abbo argued that there was no basis to impute a lack of business integrity arising from Korkis' actions on the new corporation or Harrison Market.  (*Id.*)  Abbo pointed out that neither Korkis Market, Shaya, nor Shaya's new corporation had ever been charged with SNAP violations.  (A.R. 94.)  He therefore contended that Korkis Market (and only because of its connection to Korkis), and not Shaya, had been disqualified from SNAP.  (*Id.*)

On December 10, 2013, ARO Nancy Baca-Stepan issued a Final Agency Decision affirming the permanent withdrawal of Harrison Market from SNAP. (A.R. 120-24.)  ARO Baca-Stepan reasoned that "[t]he permanent withdrawal of Korkis Market, and its owners, Faris Korkis and Abdul Sattar Shaya, brings permanent restriction of the disqualified firm as well as its owners of record from SNAP authorization."  (A.R. 123.)  She found that this information had been conveyed to Shaya in Skaer's June 18, 2009 letter addressed to Korkis and Shaya, and in the notice affirming the administrative decision dated October 6, 2010, which was addressed to Abbo and copied to Korkis and Shaya at Korkis Market. (*Id.*)  Therefore, ARO Baca-Stepan concluded that Shaya knowingly submitted false information on Harrison Market's application.  (*Id.*)  ARO Baca-Stepan distinguished the facts of the case cited by Abbo: *Warren v. United States*, 932

8

4:14-cv-10113-LVP-DRG   Doc # 26   Filed 10/27/14   Pg 9 of 18   Pg ID 356

F.2d 582 (6th Cir. 1991).  (A.R. 123-24.)  She then explained the right to appeal to federal or state court within thirty days.  (A.R. 124.)

On January 10, 2014, Sattar sought review in this Court by filing the present action pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7.  (ECF No. 1 at Pg ID 2.) In his Complaint, Sattar seeks reversal of the permanent disqualification decision. (*Id*. at Pg ID 4.)

In an affidavit submitted in support of Sattar's summary judgment motion, Shaya asserts that he in fact truthfully answered the question at issue on Harrison Market's application to participate in SNAP.  (ECF No. 15, Ex. M ¶ 4.) Shaya explains that the June 18, 2008 letter from Skaer notified Shaya and Korkis only that Korkis Market's authorization to participate in SNAP was permanently withdrawn due to Korkis' violations of SNAP regulations at Korkis' own market, Victor's.  (*Id*. ¶ 7.)  He therefore asserts: "I answered the question truthfully in that *I* was never disqualified, denied, withdrawn, suspended, or been fined for a license violation by the United States Department of Agriculture Food and Nutrition Services Division."  (*Id*., emphasis added.)

## II.   Applicable Standards

### A.   Standard of Judicial Review

Judicial review over administrative action under SNAP is set forth in the

Food Stamp Act.  The statute provides in pertinent part:

> (15) The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue . . .
>
> (16) If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence.

7 U.S.C. § 2023(a).

The Sixth Circuit Court of Appeals has made clear that the court's de novo

review under § 2023(a) is limited to the question of whether the asserted

violation(s) occurred.  *See Goldstein v. United States*, 9 F.3d 521, 523 (6th Cir.

1993).  When deciding that question, the court makes "its own findings based on

the preponderance of the evidence" and may consider evidence outside the

administrative record.  *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991)

(citing *Saunders v. United States*, 507 F.2d 33, 36 (6th Cir. 1974)).  The burden of

proof falls upon the aggrieved party.  *Id*. (citing *Goodman v. United States*, 518

F.2d 505, 507 (5th Cir. 1975)).  The court's review is more restricted if it

concludes that a violation occurred:

10

> Once the trial court has confirmed that the store has violated the statutes and regulations, the court's only task is to examine the sanction imposed in light of the administrative record in order to judge whether the agency properly applied the regulations, i.e. whether the sanction is "unwarranted in law" or "without justification in fact."

*Goldstein*, 9 F.3d at 523.

### B.   Standard for Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a

genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## III.   Applicable Law and Analysis

The statutory provisions applicable to SNAP provide that a retail food store may be permanently disqualified from participating in the program based "on the knowing submission of an application for the approval or reauthorization to accept and redeem coupons that contains false information about a substantive matter that was a part of the application." 7 U.S.C. § 2012(b)(4). Similarly, the governing regulations allow for permanent disqualification of a firm if "[i]t is determined that

12

personnel of the firm knowingly submitted information on the application that contains false information of a substantive nature that could affect the eligibility of the firm for authorization in the program . . .."  7 C.F.R. § 278.6(e)(1).  The disputed issue in this case is not whether Shaya submitted false information of a substantive nature on Harrison Market's SNAP application; rather, the issue is whether Shaya did so knowingly.

Neither the Food Stamp Act nor its implementing regulations define "knowingly."  In his summary judgment motion, Sattar urges the Court to apply the definition used by the Michigan state courts in cases involving willful misrepresentation (i.e. fraud).  (ECF No. 15 at Pg ID 205, citing *Mina v. Gen'l Star Indem. Co.*, 555 N.W.2d 1, 5 (Mich. Ct. App. 1996); *Harris v. Lapeer Pub. Sch. Sys.*, 318 N.W.2d 621, 625 (Mich. Ct. App. 1982).)  The United States contends that the more appropriate definition to apply is the definition found in the False Claims Act, 31 U.S.C. § 3729(b)(1).  (ECF No. 16 at Pg ID 317.)  The Court agrees, as the False Claims Act is the government's enforcement mechanism for Food Stamp Act violations.  *See, e.g. Arnold v. United States*, No. 98-30583, 1999 WL 301899, at *2 (5th Cir. 1999) (citing 31 U.S.C. § 3729(a)).  Under the False Claims Act,

(1) the terms "knowing" and "knowingly"–

13

      (A) mean that a person, with respect to information–

          (i)      has actual knowledge of the information;

          (ii)     acts in deliberate ignorance of the truth or falsity of the information; or

          (iii)   acts in reckless disregard of the truth or falsity of the information; and

      (B) require no proof of specific intent to defraud[.]

31 U.S.C. § 3729(b).[2]

The United States maintains that there is no genuine issue of fact that Shaya knowingly provided false and material information when answering question thirteen on Harrison Market's SNAP application because he had actual knowledge at the time that he had been disqualified from SNAP. (*See* Def.'s Br. in Supp. of Mot. at Pg ID 270.) The United States refers to Skaer's June 18, 2009 letter, which was addressed personally to Shaya and sent by Federal Express to him. As the United States points out, the letter begins by notifying the recipients: "*your* authorization to participate in the Supplemental Nutrition Assistance Program and *your* authorization card . . . are being permanently withdrawn." (*Id*., quoting A.R.

---

[2]The notable distinction between the False Claims Act's definition and Sattar's proposed definition is that the latter requires proof of the intent to defraud. *See Mina*, 555 N.W.2d at 5; *Harris*, 318 N.W.2d at 625 (also indicating that intent is generally a question of fact).

30, emphasis added.)

Sattar, on the other hand, contends that Shaya did not believe that *he* was permanently withdrawn from SNAP authorization, only that Korkis Market was withdrawn because it was partially owned by Korkis who committed SNAP violations at Victor's.  (ECF No. 15, Ex. M ¶ 7.)  Sattar argues that no document precluded Shaya– as opposed to Korkis, Victor's, or Korkis Market– from participating in SNAP.  Addressing Skaer's June 18, 2009 letter, Sattar points out that it focuses on the "firm" (i.e. Korkis Market) and FNS' authority to permanently deny authorization to a firm for lack of business integrity.  (ECF No. 15 at Pg ID 202-03, citing A.R. 30.)  Sattar further points out that the business integrity referred to in the letter is that of Korkis in that he was found to be violating SNAP regulations at Victor's.  (*Id.*)

The Court finds a genuine issue of material fact precluding summary judgment in favor of Sattar or the United States.  At the motion hearing, counsel for both parties indicated that there is no dispute about the facts presented.  Based on that evidence however, this Court finds that a reasonable juror could conclude that Shaya did not "knowingly" answer question thirteen on the SNAP applications falsely.  Skaer's letter was sent to Shaya, as Korkis Market's Secretary, and began by saying that [t]his is to notify you that your authorization" to participate in

SNAP is permanently withdrawn.  However, when read in its entirety, the letter suggests that the "you" being referred to was Korkis Market, only.  As Sattar points out, the letter continues by referring to FNS' authorization to "withdraw the authorization of any authorized *retail firm if the firm* fails to meet the specification of [Section 278.1(b)(3)(ii)(vi)]."  (A.R. 30, emphasis added.)  Further, it concludes by specifically stating: "It is, therefore, our decision to permanently withdraw the authorization of *Korkis Market, Inc.* on the basis of business integrity of Faris Noiel Korkis as indicated by *his* personal involvement in violation of the Supplemental Assistance Program Regulations."  (*Id*.)

Notably, the first time FNS expressly stated that the permanent withdrawal of Korkis Market's authorization applied to Shaya, as well, was when FNS notified him of the withdrawal of Harrison Market's authorization on July 1, 2013 (obviously after Shaya completed and submitted its authorization application). (A.R. 67.)  There, Steven Thomas, Section Chief of FNS' Retail Operations Division, wrote:

> It is the determination of the Food and Nutrition Service that your application submitted by you on behalf of Sattar Incorporated constituted an attempt to avoid or circumvent the permanent withdrawal *of you and your brother*, Farris Korkis at Korkis Market. *You both* were permanently withdrawn from SNAP at Korkis Market . . . effective November 8, 2010 due to business integrity.

16

(*Id*., emphasis added, original emphasis removed.)  ARO Baca-Stepan similarly referred to "[t]he permanent withdrawal of Korkis Market, *and its owners,* Faris Korkis *and Abdul Sattar Shaya*" in her decision affirming the permanent withdrawal of Harrison Market's authorization.  (A.R. 123.)  The record reflects no similar statements to Shaya before he completed Harrison Market's application.

In short, the Court finds sufficient evidence to create a genuine issue of material fact with respect to whether Shaya knowingly made a false representation when completing the SNAP application on behalf of Harrison Market.  The existence of this disputed issue prevents the Court from "determin[ing] the validity of the questioned administrative action in issue."

Accordingly,

**IT IS ORDERED**, that Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 16) are **DENIED**.


S/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: October 27, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, October 27, 2014, by electronic and/or

17

U.S. First Class mail.

S/ Richard Loury
Case Manager